Thank you, Your Honor. I would like to reserve two minutes and I'll watch the clock. Very good. Thank you. Ben Coleman for Mark Stephen Forrester, the appellant. We've raised several issues. Unless the court had a different preference, I was going to focus on issues numbers 1 and 2. And if I had any time, I'd maybe discuss the sentencing guidelines, but I probably won't. I'll just focus on 1 and 2. I'll take them in that order. First, with respect to issue number 1, it's our position that Mr. Forrester should have been allowed to present a defense that ecstasy falls under Schedule 3 as opposed to Schedule 1 of the Controlled Substances Act. We contend that we should have been allowed to present that defense to the jury, but at the very least we should have been allowed to present that defense to the district judge. And the only court that I'm aware of that has addressed this issue in connection with a permanent regulation is the Eleventh Circuit in Carlson. Is that your understanding as well? I believe that there is – there are actually additional cases in addition to Carlson. For example, in an opinion written by Judge Nelson, the Durham case out of this court, this court did entertain a collateral challenge to a scheduling of a – That was a temporary regulation, was it not? I believe it was a final order. That was the final order moving methamphetamine from Schedule 3 to Schedule 2. But the only case that involves ecstasy is the Carlson case from the Eleventh Circuit. It's our position that that case should not be persuasive to this court for a number of different reasons. First, Carlson was decided before Apprendi v. New Jersey and this court's decision in the United States v. Buckland. So it never even considered the question about whether a defendant has a constitutional right to present the defense to a jury. But in this particular case, though, the type of substance, in this case ecstasy, would have been an issue of fact that would have been found by a jury, wouldn't it not? Why is Apprendi or Buckland applicable in this case? Well, it's our position that any fact that determines the statutory maximum sentence has to be found by the jury. Right, and I understand that. But in this case, as you know, we don't have that because of the plea. But the reality is it would have been presented to the jury had this been a jury case, right? Well, they would have had to have found that, number one, it was ecstasy. But it's our position that they would also, number two, have had to have found that ecstasy meets the statutory criteria for a Schedule 1 controlled substance as opposed to a Schedule 3. The indictment alleges that ecstasy is a Schedule 1 controlled substance. It's our position that the jury should have to make those findings. But you're, what's your, if I understand your argument, counsel, every time there is a drug case that the defendant has the opportunity to challenge whether the illegal, the controlled substance that's in question is on the wrong schedule. Is that your position? That's not my position because in virtually every single Federal criminal case, the schedule of the controlled substance does not dictate the statutory maximum penalty. For example, most cases, and we pointed this out in the brief, most Federal drug cases involve large quantities of cocaine, heroin, methamphetamine, marijuana. Those penalties are specifically set forth in Section 841. Ecstasy presents an unusual circumstance because it is one of the few, if not the only type of Federal drug prosecution where the penalty, the actual penalty for that particular drug is not set forth. It depends on the scheduling of the controlled substance. And it's our position that in this unique circumstance, we should have been allowed to present this defense. This, our contention will have very little effect on any other Federal drug prosecution because the penalties for those types of offenses are clearly delineated in Section 841. So this is an unusual situation. And obviously, if Congress does not think that this is appropriate in the future, they can enact specific penalties for ecstasy. But they haven't done that. They have made the maximum penalties dependent upon the schedule of the controlled substance. And in that unique circumstance, we should be allowed to present the defense to the jury. In addition, we think that at the very least, we should have been allowed to present the defense to the district judge because there are cases that indicate a long line of Supreme Court cases, including Mendoza, Lopez, and Adamo Wrecking Company, which tend to indicate that when an administrative finding is used to underlie a criminal prosecution, that the defendant should at least have the opportunity for judicial review of that administrative finding in the criminal case. So it's our position that even if the Court were not to agree with us about a jury hearing this defense, at least the district judge. And what case do you rely on for that proposition? We rely on Mendoza, Lopez, which is a Supreme Court case. We also rely on Adamo Wrecking Company, which is another Supreme Court case. And also the concurrence in 2B, both the majority and the concurrence in 2B, which specifically dealt with the Controlled Substances Act, indicated that a defendant should have the ability to obtain judicial review and to attack an administrative scheduling finding. But 2B, of course, dealt with the temporary regulation. And given how long it takes to promulgate regulations to get public comments and so on, I mean, the Supreme Court was really careful, I think, to make certain that things had not been fully vetted and so on, that a direct collateral attack was okay. But we're talking about a permanent regulation here. They've had all kinds of hearings, chances for comment and so on. Why isn't a permanent regulation different for this purpose than what 2B dealt with in connection with the temporary regulation? Well, I think it's not different for a couple of reasons. Number one, and that's why we pointed to Adamo Wrecking Company, that wasn't a temporary administrative finding. That was a permanent administrative finding. And in that case, like this case, there was only a brief 30-day window in which somebody could challenge the administrative finding. And in those types of circumstances, when there's not really all that much of an opportunity for judicial review, the Supreme Court has tended to make it clear that you have a due process right to collaterally attack the administrative finding in the criminal case. And to the extent that there's – it's not clear whether there is that constitutional rule or not, under the rule of Lenany and the rule of constitutional doubt, the statute should be interpreted as avoiding that potential constitutional problem. So to the extent that the court thinks, well, it may be clear that there's a constitutional rule in the context of a temporary finding, but it's not so clear in the context of a final finding, the court should avoid that constitutional question and interpret the statute in the way that we suggest. And those are basic principles of statutory construction, all of which the court in Carlson, to get back to the original point, did not consider. The Carlson court did not consider these constitutional rules, did not consider the rule of constitutional doubt, did not consider the rule of Lenany or any of these other principles of statutory construction. So for all those reasons, we'd urge the court to reverse the case on the first issue. And if there were no other questions on the first issue, I'd like to move to the second issue, which was the issue surrounding the Section 851 information. When we were previously before the court in this case, this Court reversed Mr. Forrester's conviction and found that the district court misadvised him of the maximum penalties that he was facing. The district court informed Mr. Forrester that he was facing a minimum of 10 years and a maximum of life in prison, when the reality is at that time, he was facing no minimum mandatory penalty and he was only facing a maximum of 20 years. Mr. Forrester then proceeded to handle his case with that understanding of the penalties, the understanding as the district court conveyed them. For eight months, he was looking at a maximum of 20 years. And then on the eve of trial, the government made an offer to him in which they indicated that if you plead guilty, we won't file a Section 851 information. And Mr. Forrester had a very limited window of time that he had from that morning until 2 p.m. that afternoon to make a decision whether to accept that offer. The offer was not accepted and the government then filed an 851 information which increased his statutory maximum penalty from 20 years to 30 years. That offer was to both your client and Mr. Albo, is that correct? That's the position that the government is taking. That's true, is it not? I was not counsel at the time. My review of the record, there is nothing to indicate that it was a package deal. The record simply indicates that there was an appearance before the district court that morning. There is mention of an offer, and if the offer is not accepted, then an 851 information will be filed. But there is no indication in the record that it was a package deal. But even if it was a package deal, and let's assume that it was a package deal, the bottom line is that Mr. Forrester had over eight months in which he could have just pled straight up to the indictment. He could have just entered a guilty plea and cut his exposure to 20 years right there. But he didn't do that, nor could he have thought about doing that, because he was told that his maximum penalty was life in prison. And in this particular circumstance, we have a case that some... Wouldn't that tend to cut against you, though? Because in this case, he thought his exposure was even greater. That's usually what would encourage people to accept a plea rather than to deny a plea. Isn't that correct? Well, I don't think so, because that is one reason why people often plead guilty. But another reason could be to limit your exposure. And in this case, that's what he could have done. He could have pled guilty to the 20-year maximum before the 851 information was filed and saved himself 10 years, 10 valuable years of his life. And it's our position that in a very similar case, the Munoz case from this court, where an attorney misinformed his client about the exposure that he was facing under a plea deal, that this court found that a defendant was entitled to habeas relief even under the highly deferential AEDPA standard. And in addition, under that habeas relief, he was entitled to reinstatement of the plea offer. In this case, we simply asked the judge to allow Mr. Forrester to plead guilty to a zero to 20-year charge, which would have at least saved him. He ultimately got 30 years. It would have saved him that additional 10 years. We think under Munoz, because the district court misinformed Mr. Forrester, he should have been given that right. The district court ---- But Munoz, if I recall, does not deal with the rejection of a plea offer, does it? It does. It does. In that case, the defendant's attorney told him that the defendant got an offer for 11 years. The defendant's attorney told him, I think it was 22 years or 20 years, I can't remember exactly, but told him it was a 22-year offer. So the defendant declined the offer, went to trial, was convicted. After the fact, he finds out that the offer, the defense attorney screwed up. The offer wasn't really 22 years. It was really only 11 years. And he said, I want that offer. And this court, on habeas review from a state court conviction, held that, yes, because of the attorney's deficient performance, because of his misadvice, the defendant should have been allowed the opportunity to plead to that initial offer and sent the case back to the state with directions to reinstate the plea offer. So the defendant did reject the offer and go to trial on Nunez, which is what, you know, which is what happened in this case. The district court in ruling on this issue didn't really entertain Nunez or the merits. The district court simply explained why he gave the erroneous advice, which, number one, we don't believe is really relevant, but number two, the district court's explanation was also curious. The district court said that he misadvised Mr. Forrester about the potential in the future face a CCE charge. But even if that was the case, the district court still would have erred because the district court told Mr. Forrester that he was looking at 10 to life and a CCE charge carries a sentence of 20 to life. So the district court's reasons for denying this argument, we believe, A, were irrelevant and, B, were just simply incorrect. And so we believe that the court should reverse and allow him to plead to a 20-year cap. At the very least, we think the court should remand for hearing on this issue. The court had questioned about whether it was a package deal or not. There are no findings by the district court about whether it was or was not a package deal. There were no findings made by the district court at all. The district court simply rejected the argument without getting into any of the legal or factual issues that are involved in the claim. If there are no other questions on that, I've got a few more minutes. I'd like to briefly touch on the sentencing guidelines and then I'd see if there's any time for rebuttal. We have two contentions with respect to the sentencing guidelines in this case related to an ex post facto claim. And then we also have contentions about the district court's finding as to the amount of ecstasy. The first is that Mr. Forrester's guilty plea only established the facts of that guilty plea only established conduct in November of 2000. In May of 2001, the sentencing commission attempted to promulgate a temporary amendment to the guidelines which made the base offense level for ecstasy, increased basically the base offense level for ecstasy. It's our position that given the limited factual basis of the guilty plea in this case, that using that May of 2001 temporary amendment violates the ex post facto clause. Secondly, even if the court were to determine that even though the factual basis for the guilty plea was limited to November of 2000, it can look to facts that are outside of the guilty plea and we disagree with that. But even if the court were to take that approach, it's our position that that May 2001 temporary amendment was promulgated in violation of the Administrative Procedures Act. The Eighth Circuit in the United States versus Delon has specifically held, or Deleon, I think it is, has specifically held that that temporary amendment failed to comply with the Administrative Procedures Act. And the government hasn't really taken on the Deleon case in any way, shape, or form, so we believe that this court should follow that. Your position is that the amendment became effective June 6th, is that correct, 2001? No, that's the government's position and the district court's position, was that even if the amendment was invalid, that the amendment was then published in the Federal Register on June 6th of 2001, and therefore you should use that date. Okay, so it's the date that became final, right? Our position is it should be the date that it became final, which is November of 2001, which is after Mr. Forrester was arrested. So after any conceivable claim that the conduct continued to occur. But it's our position that the court should not use that June 6th, 2001 date based on this Court's decision in Bushman. In Bushman, this Court held that when a regulation is promulgated in violation of the Administrative Procedures Act, the effective date to use is the final, is the date that it became final, which in this case, again, is November of 2001, not June 6th of 2001. How do you say that it violated the Administrative Procedures Act? The Eighth Circuit held that the way that the sentencing commission attempted to promulgate the guideline is that they attempted to make a guideline, they promulgated it and attempted to make it retroactive to a past date. And when they did, you're not allowed to do that under the Administrative Procedures Act. And so in the way that they did it, it violated. That's your violation? Yes. I see I have a little over three minutes left. And unless there are any other questions on any of the issues, I'll save them for later. If you wish, you can reserve that for rebuttal. Thank you. Thank you. Mr. Robinson. Good morning. May it please the Court, my name is Todd Robinson, and I represent the United States of America. And with the Court's permission, what I'd like to do is treat the issues that were raised in the CFR. And I'm going to start with the one that was raised by Mr. Coleman, starting first with the sentencing issue. The government's position is that when it was, when the amendment was published in the CFR, that is on June 6th of 2001, that is the effective date of that guideline amendment that amended the ratio from 50 to 1 to 500 to 1. And what is clear here is that the conducted issue in this particular case, the conspiracy ended on October the 18th of 2001. There was no dispute by Defendant Forrester during the factual hearings and the sentencing proceedings that his conduct spanned not only the start date of the conspiracy but up to and including the arrest date, that is October the 18th of 2001. Let's work backwards if we can. Under Carter and Galinas, or Galanis, my understanding is that the district court has to make a finding with respect to each disputed fact. And in this case, the court really didn't make much of a finding as to the amount of the ecstasy involved and perhaps miscalculated the amount of the ecstasy involved. Does the government concede that the district court failed to make the requisite findings, whether or not the regulation covered the 500 to 1 issue? No. In fact, the court held extensive hearings on the issue as to the lab capabilities in this case. I understand that. But did the court make the requisite findings? We've got a situation here, for example, we have a case called United States v. Chase that you're aware of, where the government's expert chemist used the TMY method, which is what was used here. And we felt that was an inappropriate methodology to calculate drug quantity. Why don't we have the Chase problem in this case? Because there were two separate independent bases upon which the court correctly concluded that the conspiracy involved in excess of 60 kilograms of ecstasy. The first is the testimony of DEA chemist Skinner. And what DEA chemist Skinner did was he took the seized chemicals, that is only the chemicals that were seized on the takedown date, not the wiretap conversations, not the finished product that was sold during the course of the conspiracy, or the chemicals that were wasted during the production process, only those chemicals that were seized on the day of the takedown. And he did a theoretical analysis. Well, that's the one I'm talking about, that's the TMY analysis. Right, but what chemist Skinner did with that theoretical analysis is he reduced it by 50%. And he reduced it by 50% to give every benefit of the doubt to Forrester when coming up with the yield capability of the lab. And it's significant because the co-defendant in this case, the self-avowed partner of Forrester, stated that they were achieving a yield in excess of 50%. Well, and didn't Skinner rely upon ALBA for making this calculation? Yes. Okay, and so how does that meet the Kilby reliability standard? He also relied upon the seized documentation in this case. There was extensive records that were seized during the course of the investigation which documented the various methodologies that were being utilized by the co-conspirators to achieve the end result of ecstasy. Do you recall where in the record that part is referred to to talk about the documentation? That was elicited during the cross-examination, I believe, of Special Agent Skinner on the 25th of May. And he also testified to the records that were seized during his trial testimony in the underlying case. But aside from that, assuming for the sake of argument that no chemicals were seized at all during the takedown in this case, what we also have is we have a detailed business plan that was authored by the defendants. It was authored in connection with Forrester's attempt to set up a laboratory site in Mexico. And those detailed plans call for the manufacture of 440 kilograms of ecstasy per month. And these are not fanciful notations that are just being jotted down as thoughts. This is a detailed accounting of how many people it would take to provide security, how much the lab equipment would cost for startup costs, what were the transportation costs of this organization. So that is the conspiracy which Forrester joined. Now, you're saying that Skinner's testimony was primarily based upon that evidence, or was it based upon the TMY calculation? No. Agent Skinner's or Kenneth Skinner's testimony was based solely on a theoretical lab analysis. Right. So he wasn't relying on the documents. He was not. But that is a second. He didn't rely upon the documents. The district court had an independent basis upon which it could. I understand that. But did the district court make its calculation based upon those documents? The district court found that the capability of the lab when it was seized was in excess of 60 kilograms of ecstasy. And where is that found in the record? During the initial sentencing hearing of Defendant Forrester before the remand, that was specifically made. And, of course, the facts. You don't have an ER or an SER site for me? The theoretical yield of 180 kilograms is at the 173 of the excerpts. The reduced theoretical yield by 50 percent is at the government supplemental excerpts of the record. And the business plan that was seized. And where in the SER? At page 353. I'm sorry, Your Honor. Okay. And the extensive business plan that was seized, upon which the court could also properly base its calculation, is at the supplemental excerpts of record at page 359 to 393. Moreover, the district court had the benefit of this 19 defendant case. Two defendants went to trial. The other 17 defendants pled guilty to the conspiracy that Forrester was convicted of after trial in the initial case, and to which he pled guilty. And in each and every one of those plea colloquies, each defendant admitted that the object of this conspiracy was to manufacture in excess of 60 kilograms of ecstasy. So there is – Would that be in any of the documentation in this case, what the court knew in terms of the other 17 defendants? It would be in the court record. The district court Judge Whalen took all of those guilty pleas and sentenced all of those defendants. So it is part of the clerk's record with respect to the other defendants. How about in this case, though? In other words, for purposes of sentencing Forrester, did the court specifically make reference to any of these earlier pleas and what these other 17 defendants said? Not specific to each one of those defendants, but that was submitted as part of the government's paperwork urging the court to find a base offense level of 38. Do you remember which paperwork it was that the 17 defendants were referred to and the amount of ecstasy being produced? In the government sentencing memorandum, the government advanced multiple theories of argument. Those that I've just stated, that is, the testimony of D.A. Chemist Skinner as an independent basis, as well as the seized documentation. In fact, the government argued in its sentencing memorandum that under Section 2D1.1, the court would have been well within its right to increase the base offense level under the commentary because of the scope of this laboratory and the amount of ecstasy that they were trying to manufacture. Thank you for that explanation. With respect to the A51 enhancement, the record does demonstrate, and I would cite to the government's supplemental excerpts of record at page 26, footnote 1, that the plea offer that was made to Forrester and Alba some five days before their trial was set to begin was in fact a package deal. What was the cite on that again, please? The government's supplemental excerpts of record at page 26, footnote 1. And again, that is based in a pleading that was submitted by the government to the court reciting what transpired. And the record makes clear that the district court did not want to engage in any fashion whatsoever in the plea negotiation process. So when the government tried to explain what was happening, the district court, pursuant to Rule 11, stated that it was not interested in becoming involved in the plea agreement negotiations in this case. So from the government's perspective and from where we have to look at this, in terms of Mr. Forrester's case comes back. He says he wants the same deal, but for purposes of our analysis, we have to understand that he did not ever have a unilateral right to accept a plea. It was a package deal. So that if Mr. Alba, based upon what you've represented, clearly indicated he would not accept it, then that would undercut presumably Mr. Forrester's argument that he is now entitled to have that plea again. Is that correct? That is completely accurate, and that is exactly what happened in this case. What Mr. Forrester is seeking is specific enforcement of a deal which never existed. When Alba rejected his part of the package deal, even if Forrester had been advised of the penalties by the judge and not had the infirmity that was recognized in the FRERETA colloquy, he could not have accepted an offer because there was none for him to accept. Alba had rejected his offer, and therefore, under the package deal offer, there was no offer for him to accept. Finally, turning to the original argument that was made as to the scheduling of ecstasy, the Court posed a very direct and specific question to counsel and asked whether the Carlson case, the 11th Circuit case, was the only case dealing with this specific issue. And there was an artful answer that there were other cases which tended to indicate that the position being advanced by Forrester was, in fact, correct. The reality of the situation is the Carlson case is the only case to address this specific issue that's being framed by Forrester in the instant appeal, and the Carlson case resolved that issue adverse to the position now being advanced by Mr. Forrester. With respect to the scheduling of ecstasy, it is clear that the district court at no time had jurisdiction to entertain any challenge to the scheduling of ecstasy. And that would be the difference between the Mendoza-Lopez and the Reckin Company cases cited by Forrester to advance his position. Neither one of those cases dealt with a final scheduling order in the Controlled Substances Act. Just to be sure I understand, if I understood the representations of opposing counsel, he indicated that at least the Reckin Company case did deal with the final order. Your position is that that is a mistake on his part. Is that correct? It's a final administrative order, but it's an entirely separate arena. It does not deal. I understand. It did not deal with this particular issue. Correct. And the difference is significant because jurisdiction in the district court is something conferred by Congress. And in Title 21, Section 877, the statute specifically provides for the mechanism by which an aggrieved party can challenge a final scheduling order. And therefore what, in essence, Mr. Forrester is asking this Court to do is to ignore the plain language of Section 877 and to vest the district court with jurisdiction to resolve the collateral issue as to whether or not ecstasy should be a Schedule I or Schedule III controlled substance. So without that statutory basis, the district court in the government's position doesn't even have jurisdiction to hear the challenge, let alone to decide it. It does not. 877 makes clear that there are only two courts which have jurisdiction, either the district court in D.C., the Circuit Court of Appeals in D.C., or the circuit court in which the aggrieved party is a resident or has their place of business. And the Greenspoon case shows the manner in which an aggrieved party can properly challenge the final scheduling order of a controlled substance. And for purposes of Mr. Forrester, what's his residence for purposes of this section? Well, his business, if you will, would be in the Southern District of California, and therefore it would lie in the Ninth Circuit. He also maintained residences throughout the State of California. So the Ninth Circuit would be the proper venue for him to challenge a final scheduling order. So basically his right to challenge is at the court of appeal level rather than at the district court, if there's a basis at all. That is correct. Okay. And there are two ways to view the 30-day filing requirement. Obviously it's 30 days following the promulgation of a final order, but even taking if that standard were relaxed for Mr. Forrester, and we work from the date of his arrest in November of 2001, he was represented by counsel from November of 2001 until October 23rd of 2002, and at no time did he challenge that scheduling order. So I understand and I acknowledge the Coretta infirmity in the original proceedings, but that simply does not come into play because during that entire time period he was a represented party and no challenge was brought to the final scheduling order. So the statute just passed and he's out of luck. He is. Okay. And questions of that nature are, as noted in the Carlson case, are not properly submitted to a jury. It's a different standard of proof. The basis for the scheduling is the hearsay, anecdotal testimony of users, doctors. It's an unworkable proposition, and the court posed a question to my colleague with respect to whether or not this opens the door for collateral attack on other scheduling of controlled substances. Sure, it does. It may not affect some controlled substances because those are delineated in 841 and the maximum and minimum penalties are attended to the drug quantity amounts, but the designer drugs, if you will, where we have oxycodone, fenfluramine, and all the other controlled substances which are developed and sometimes temporarily scheduled, all of those would be subject to this type of collateral attack. This is a fairly frequent phenomenon of basically custom designing drugs now, right, where you're constantly having to keep up with that. Which is exactly why they have the temporary scheduling provisions because they come up with analog substances and you can change the molecular composition of a particular drug so that it's not technically a scheduled substance and, therefore, there is the temporary scheduling authority which the Toobie Court recognized as necessary given the sort of changing landscape, if you will, of the market for controlled substances. And I gather it's the government's position that, of course, we'd have little choice under Toobie, if this were a temporary regulation and if it had been timely filed, you would acknowledge that there would be a right to collaterally attack this. I would acknowledge that it would be a question for the district court to consider because that jurisdiction over that issue, as recognized by the Supreme Court, is not foreclosed by 877. And, therefore, to comport with the constitutional requirements, that would have to be litigated in the district court. And that would not be inconsistent, as is the position currently urged by Forrester with 21 United States Code, Section 877. If there are no further questions, I submit. No other. Judge Nelson, any questions? No. Thank you very much. Time for rebuttal. Thank you, Your Honor. I'm going to try to hit on all three issues quickly. First, with the sentencing guidelines. And I want to ‑‑ I still think that there's a lot of ambiguity in some of the answers, and it's making it difficult for the court, so I want to try to get the record as clear as possible. The district court, when the initial sentencing proceedings, when Mr. Forrester, he had represented himself, and I think he had a standby counsel that filled in for his initial sentencing proceedings, I wasn't involved in those proceedings at all. Those occurred in 2005. At that time, the district court held the hearing and determined the base offense level. Mr. Forrester then, I represented him on appeal. The case comes back down, and I represented him in the subsequent proceedings. At that sentencing proceeding, there were no findings made whatsoever. There was no hearing conducted whatsoever. There was no testimony whatsoever. And it's important for at least two reasons. The first is that the district court relied on the theoretical maximum yield theory at the initial sentencing hearing in 2005. After that hearing, this court decided chase, as Your Honor pointed out, in 2007, which indicated that's not a good theory. You can't rely on that theory anymore. So now we're back getting sentenced in 2009, and I'm urging the district court, I'm telling the district court, you relied on an improper theoretical maximum yield theory. You need to reevaluate what you have done under the circuit's new precedent. The district court did none of that. The second problem is that because there wasn't really much in the way of representation at the initial round of the district court proceedings after Mr. Forrester represented himself, there was a variety of factual issues that were to be raised. And I can give the court just a few pages to look at, which is going to clarify a lot of this. ER pages 173 through 178. Just those five pages will clarify a lot. Page 173. That's on your argument to the court about the TMY? Exactly. Okay. Page 173 is an exhibit that was introduced at the initial sentencing proceeding. And this is the government's exhibit setting forth its calculations. And there's some hand marks in there. Pages 174 through 178 is a sentencing exhibit that I presented at the second sentencing in which I presented a law enforcement article which discussed how the ratios of precursor chemicals to ecstasy, how you determine how much precursor chemical will yield how much ecstasy. And this article refutes the methodology and the calculations that the district court initially relied on and what the government proposed at the first sentencing hearing. Now, the district court made no findings whatsoever at the second sentencing hearing about this article that I had submitted and about my legal arguments that it had relied on a theoretical maximum yield theory. What about opposing counsel's suggestion that the experience with the 17 defendants who pled, that that was in the government's sentencing memo, what's your take on that? Nonsense. The other defendants, number one, pled guilty under plea agreements and didn't contest anything. There were no hearings. There were no factual findings. They just pled guilty, number one. Number two, as an aside, if you want to compare it to the other defendants, all the other defendants who pled guilty to the same conspiracy got 20 years less than Mr. Forster. The maximum sentence was 11 years. So if we want to talk about comparing other defendants, I think the government's in an awkward position. But in addition, all those defendants were sentenced under the old law before Chase, and none of them raised to the court this law enforcement article that I did. So those other defendants had nothing to do with all the arguments that are raised here. And the district court did not in any way point to some specific finding which refuted Chase and refuted my time is up. I want to compliment both sides in this case on the very high quality of your briefs and your oral argument. We don't always get that. And without in any way indicating which way we're going to rule, we do appreciate the quality of the argument on both sides, and we compliment you. Thank you. Thank you. We'll take a brief recess. This case is submitted. We'll take a brief recess to change the composition of the panels, and then we'll come to the next case. Thank you.
judges: Hall, Nelson T. G., Smith M.